IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAVID MARTIN MOLLETTE, III )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Civil Action No. 7:13-CV-222 |

## REPORT AND RECOMMENDATION

Plaintiff David Martin Mollette III ("Mollette") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Specifically, Mollette alleges that the Administrative Law Judge ("ALJ") erred by finding his subjective complaints of pain and fatigue less than fully credible.

This court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the arguments of counsel, and the applicable law. I conclude that substantial evidence supports the ALJ's decision denying benefits. Accordingly, I **RECOMMEND DENYING** Mollette's Motion for Summary Judgment (Dkt. No. 15), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 17.

1

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Mollette failed to demonstrate that he was disabled under the Act.[1] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## STATEMENT OF FACTS

Mollette was 41 years old and considered a younger person under the Act on his alleged onset date. R. 20; 20 C.F.R. § 416.963. He received his GED, and previously worked full-time as a mechanic and handyman. R. 37. He is a registered sex offender, and was in and out of prison during the alleged period of disability. R. 34–38. At the time of the administrative hearing, Mollette worked part-time for a friend cleaning out a garage to help pay his child support. R. 34.

Mollette protectively filed for SSI on October 19, 2009, claiming that his disability began on September 4, 2009. R. 15, 142. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 52–59, 61–70. On November 2, 2011, ALJ Steven A. DeMonbreum held a hearing to consider Mollette's disability claim. R. 26–51.

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. §1382c(a)(3)(B).

Molette was represented by an attorney at the hearing, which included testimony from Mollette and vocational expert Ashley Wells. R. 26–51. At the hearing, Mollette amended his onset date to October 19, 2009. R. 31.

On November 25, 2011, the ALJ entered his decision analyzing the claim under the familiar five-step process and denying Mollette's claims.[2] R. 15–22. The ALJ found that Mollette suffered from the severe impairment of trigeminal neuralgia,[3] which did not meet or medically equal a listed impairment. R. 17–18. The ALJ determined that Mollette retained the RFC to perform medium work, and specifically that he can frequently climb stairs, balance, kneel, stoop, bend, crouch, and crawl; occasionally climb ladders, ropes, and scaffolds; and must avoid all exposure to machinery, unprotected heights, and hazards. R. 18. The ALJ determined that Mollette could not return to his past relevant work as a mechanic (medium, skilled work), siding and window installer (medium, semiskilled work), and cleaner (unskilled, medium work) (R. 20), but that Mollette could work at jobs that exist in significant numbers in the national economy: namely kitchen helper, dining room attendant, and warehouse worker. R. 21. Thus,

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[3] Trigeminal neuralgia (TN), is a chronic pain condition that affects the trigeminal or 5th cranial nerve, one of the most widely distributed nerves in the head. TN is a form of neuropathic pain (pain associated with nerve injury or nerve lesion.) The typical or "classic" form of the disorder causes extreme, sporadic, sudden burning or shock-like facial pain that lasts anywhere from a few seconds to as long as two minutes per episode. These attacks can occur in quick succession, in volleys lasting as long as two hours. The "atypical" form of the disorder is characterized by constant aching, burning, stabbing pain of somewhat lower intensity than Type 1. Both forms of pain may occur in the same person, sometimes at the same time. See http://www.ninds.nih.gov/disorders/trigeminal_neuralgia/detail_trigeminal_neuralgia.htm

3

the ALJ concluded that he was not disabled. R. 22. On March 28, 2013, the Appeals Council denied Mollette's request for review (R. 1–4), and this appeal followed.

## ANALYSIS

Mollette raises only one issue on appeal: whether the ALJ improperly discredited his testimony that his pain and fatigue render him incapable to perform substantial gainful activity. Mollette's disability claim hinges on his subjective testimony that he suffers from disabling pain and fatigue as a result of his trigeminal neuralgia. At the administrative hearing, Mollette testified that his trigeminal neuralgia causes extreme, sharp, stabbing pains of various degrees in his face about five or six times a day. R. 39. The pain initially only affected the left side of his face, but now affects both sides. R. 39. Mollette testified that he is prescribed Neurontin, which helps keep his pain at a minimum, although he still has pain on a daily basis. R. 40. Mollette testified that his pain interferes with his daily activities, and causes him to feel fatigued. R. 41. Mollette asserted that he must lie down anywhere from three to eight times a day due to pain and fatigue. R. 41. Mollette also testified that the trigeminal neuralgia medication makes him feel dizzy, causing him to stumble when standing and walking. R. 41. Mollette argues that this testimony establishes that he is disabled.

Mollette's subjective allegations of disabling pain are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Mollette met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Mollette's ability to work. Id. at 594–95. A review of the record as a whole demonstrates that substantial evidence supports the ALJ's decision to find

4

Mollette's subjective testimony partially credible, and determine that he is capable of performing medium work.

Mollette's medical evidence is sparse. Prior to his alleged onset date, Mollette was diagnosed with and sought treatment for trigeminal neuralgia. R. 217–18, 238–42. Throughout the relevant period, Mollette sought treatment primarily with the Bradley Free Clinic, which managed and prescribed his medications. On November 5, 2008, neurologist Christopher Scherer, M.D., reported that Mollette's trigeminal neuralgia was "doing well" on Tegratol and Neurontin with no side effects. Dr. Sherer continued Mollette's medications. R. 217. On November 11, 2008, Mollette visited the Bradley Free Clinic and noted that his facial pain had not bothered him for several weeks, and that he felt more energetic and was able to walk around normally without feeling fatigued. R. 238.

In April 2009, Mollette suffered a seizure while incarcerated, and was found unconscious in his cell. R. 221–30, 269–70. Follow up tests of his head were normal. R. 226.[4] After his release from prison, Mollette continued to seek treatment with the Bradley Free Clinic, mainly for medication refills. R. 236–37, 244–45, 250.

Mollette's medical records consistently reflect unremarkable physical examinations.[5] R. 236, 244, 250, 258, 261, 268. In March and July 2010, state agency physicians Robert McGuffin, M.D. and Joseph Duckwall, M.D., respectively, reviewed Mollette's medical records and found that he was capable of performing medium work. R. 55–57, 64–68. Dr. McGuffin

---

[4] Mollette submitted treatment records from Western Virginia Regional Jail and Lewis Gale Medical Center as additional evidence to the Appeals Council. In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this Court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991).

[5] Mollette's records also reflect various complaints of medical issues unrelated to this case, such as high blood pressure, tooth pain and infections, swollen lymph nodes, groin pain, and difficulty breathing. R. 236–237, 244, 258, 268, 270.

5

noted that although the medical evidence indicated that Mollette may experience some pain and tenderness, there is no significant inability to move about, severe muscle weakness, or nerve damage that would prevent Mollette from performing his normal daily activities. R. 59.

On April 8, 2010, Mollette visited the Bradley Free Clinic complaining of trigeminal neuralgia pain. R. 258. Mollette was given a refill for Trazodone. R. 258. On May 17, 2011, Mollette returned to the Bradley Free Clinic for a checkup, and noted that he had not been taking his medications for trigeminal neuralgia. R. 263. Mollette returned to the Bradley Free Clinic on July 7, 2011, complaining of break through pain, and his medication dosages were adjusted. R. 261. On August 18, 2011, Mollette met with Joseph Lemmer, M.D. at the Bradley Free Clinic, complaining of breathing problems, lack of energy, stress and trigeminal neuralgia. R. 268. Dr. Lemmer prescribed an Albuterol inhaler and recommended that Mollette stop smoking. R. 268.

Based on the medical evidence set forth above, the ALJ determined that Mollette's medically determinable impairment of trigeminal neuralgia could reasonably be expected to cause his alleged symptoms, but that Mollette's testimony concerning the limiting effects of his pain were only partially credible. R. 19–20. A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.)

Here, the ALJ reviewed the medical evidence in detail, and noted that the record as a whole reflected only mild restrictions on Mollette's daily activities. R. 20. The ALJ gave great

6

weight to the opinions of the state agency medical doctors, both of whom found Mollette capable of performing medium work. R. 20. The ALJ also noted that no doctor recommended any functional restrictions for Mollette, or limited his ability to drive. R. 20. Finally, the ALJ questioned Mollette's testimony regarding his need to lie down multiple times a day, given that Mollette's medical records do not reflect such severe limitations.[6] R. 20.

Substantial evidence in the record supports the ALJ's finding that Mollette's statements concerning the intensity, persistence and limiting effects of his pain are not fully credible. Mollette's medical records do not provide an evidentiary basis to corroborate his subjective allegations that he is incapable of performing medium work. The medical records reflect that Mollette received only prescription medication to treat his complaints of pain. Mollette noted to his doctors, and testified at the administrative hearing, that the prescribed medication successfully lessened his pain. R. 40, 217. Yet, on at least three occasions Mollette admitted that he had not been taking his trigeminal neuralgia medications as prescribed. R. 237, 236–37.

Further, although Mollette's treatment notes document his condition and subjective complaints; they do not reflect functional limitations restricting him to less than medium work. Mollette's "statements to physicians by way of history or complaint do not constitute objective medical evidence, and the recording of a claimant's complaints by a physician does not transform those complaints into objective clinical evidence." King v. Barnhart, 6:04CV00053, 2005 WL 3087853, at *4 (W.D. Va. Nov. 16, 2005) (citing Craig v. Chater, 76 F.3d 585, 590 n. 2 (4th Cir. 1984)). Additionally, the only physicians who rendered an opinion as to Mollette's functional capacity both found him capable of performing medium work.

---

[6] Mollette alleges that the ALJ improperly discredited his complaints of pain and fatigue because he was working at the time of the administrative hearing. Mollette argues that the ALJ ignored the fact that his job is for a friend and includes significant special accommodations. However, the ALJ noted in his decision that Mollette's job was only part-time, earning only $200.00 weekly. R. 20. Further, the ALJ also relied upon the absence of complaints of pain and fatigue in Mollette's medical records, and on Mollette's testimony regarding his daily activities. R. 20.

7

Mollette asserts that the ALJ improperly relied upon his sparse medical treatment because his ability to seek treatment was limited due to lack of income. However, the ALJ did not penalize Mollette for failing to seek additional medical treatment, but rather, based his determination on the evidence contained in the medical evidence and records as a whole. Further, Mollette's asserted inability to afford medical care is weakened when coupled with his admission to smoking a pack of cigarettes a day. R. 35.

In sum, the medical records do not reflect pain so severe as to render Mollette disabled. The ALJ is charged with weighing all of the evidence and assessing the claimant's credibility, and a claimant's subjective allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges." Hines v. Barnhart, 453 F.3d 559, 565 n.3 (citing Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996)).

Here, the ALJ did not assert that Mollette was pain free. On the contrary, the ALJ recognized that Mollette suffers from a condition that can cause severe facial pain. The issue, however, is not whether Mollette has a severe impairment or experiences symptoms, but whether those impairments and symptoms prevent him from performing the medium level of work identified by the vocational expert. The ALJ accounted for Mollette's trigeminal neuralgia by limiting him to medium work with frequent postural activities and no exposure to hazards. Given Mollette's conservative medical treatment, his unremarkable physical examinations and the opinions of state agency physicians Drs. McGuffin and Duckwall, I find that substantial evidence supports the ALJ's decision in this case. The issue before this court is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight

8

of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard—defined as more than a mere scintilla but perhaps somewhat less than a preponderance—is met, I cannot recommend reversing the ALJ. <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **DENYING** plaintiff's motion for summary judgment, **GRANTING** summary judgment to the defendant, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Enter: July 7, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

9